UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLAIR LOEWY, individually, and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. 1:11-cv-4872<br>) |
| v. | ) Hon. Rebecca R. Pallmeyer<br>) |
| LIVE NATION WORLDWIDE, INC. a Delaware corporation, | )<br>)<br>) |
| Defendant, | )<br>)<br>) |

## MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiff Clair Loewy ("Plaintiff") and Defendant Live Nation WorldWide ("Live Nation") (together, the "Parties") respectfully move this Court pursuant to Federal Rule of Civil Procedure 23, for an order (1) granting preliminary approval of the class action settlement in this matter, (2) certifying the proposed Settlement Class, (3) approving the form and content of the notice to be sent to the members of the class pursuant to the plan detailed in the settlement agreement, (4) appointing proposed Class Counsel, and (5) scheduling a final fairness hearing. In support of this motion, Plaintiff states as follows:

### I. INTRODUCTION

Defendant Live Nation owns and operates automated teller machines ("ATMs") at the Charter One Pavilion at Northerly Island. Plaintiff's claims in this case arise from Defendant's alleged failure to provide its ATM users with adequate notice of transaction fees as required by the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA"). The Parties have reached a class action settlement, the structure of which mirrors several other settlements previously approved by the Northern District of Illinois. The difference between the instant settlement and

those previously approved by other courts in this District is the value of this settlement is significantly higher than its predecessors, while the size of the class is significantly smaller.[1] The result is an incredibly strong settlement that provides meaningful relief to each Settlement Class member.

Under the terms of the proposed settlement agreement, Live Nation will establish a settlement fund of $100,000.00 from which Settlement Class members who submit valid claims will be entitled to a cash payment of $150.00. Additionally, the settlement affords the Class substantial prospective relief designed to ensure that Live Nation no longer charges unlawful ATM transaction fees in the future, and even has a *cy pres* component—40% of any monies remaining in the settlement fund will be distributed to the Bluhm Legal Clinic of Northwestern University School of Law and the Chicago Legal Clinic, subject to Court approval.

In sum, the proposed settlement agreement—which is the result of five months of arms' length negotiations—is an exceptional result for the Settlement Class and if approved, will finally resolve all claims asserted against Live Nation in this action. Accordingly, and in light of the risks attendant with protracted litigation, the Court should find that the results achieved are well within the range of possible approval, and grant the instant motion in its entirety.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On July 19, 2011, Plaintiff filed her Class Action Complaint (Dkt. No. 1) and motion for

---

[1] In those cases, the Court approved settlements that were comprised of much smaller settlement funds than the $100,000.00 settlement fund that Live Nation has agreed to create here. *See e.g., Marsh v. ATM Capital Management, Inc.*, Case No. 07 C 5808, Dkt. Nos. 30, 33 (N.D. Ill. 2007) (approving a settlement fund totaling $18,380.00); *see also Machiela v. Trizec Holdings, Inc.*, Case No. 05 C 3562, Dkt. Nos. 26, 32 (N.D. Ill. 2005) (approving a settlement fund totaling $29,000); *see also Drexler v. George Loukas Real Estate Inc.*, Case No. 07 C 5471, Dkt. No. 13, 20 (N.D. Ill. 1997) (approving a settlement fund totaling $40,056.00). Thus, the proposed settlement provides exceptional relief to the Settlement Class and is well within the range of possible approval.

class certification (Dkt No. 2) against RBS Citizens, N.A. d/b/a/ Charter One Bank ("RBS")—the company originally believed to be the owner and operator of the ATMs at issue. Soon after the Complaint and motion were filed, on July 25, 2011, counsel for Live Nation telephoned proposed Class Counsel and informed him that he named the wrong party-defendant, and that Live Nation was the operator of the ATMs. (Declaration of Ari J. Scharg ["Scharg Decl."], ¶ 4, attached hereto as Exhibit 1). During that telephone call, the Parties discussed the potential for early resolution, and agreed to begin an informal exchange of information through which Plaintiff hoped to demonstrate the veracity of her claims and provide Live Nation with further detail of her legal theory. (Scharg Decl. ¶ 5.)

As part of the settlement discussions, on September 2, 2011, proposed Class Counsel and counsel for Live Nation met at the Chicago office of Edelson McGuire LLC. (Scharg Decl. ¶ 6.) During that meeting, the Parties identified additional information and documents that each side still needed to fully assess the merits of the case, and agreed to begin a second informal exchange of information and documents. (Scharg Decl. ¶ 6.) Based on the documents exchanged, the Parties were ultimately able to determine the size (approximately 210 individuals) and scope of the class. (Scharg Decl. ¶ 7.)

Notwithstanding Live Nation's denial of any wrongdoing, the Parties continued their settlement negotiations. While they were able to agree on the general structure of a settlement, they were unable to reach agreement on all material terms at that time. (Scharg Decl. ¶ 8.) On September 20, 2011, the parties appeared in Court for status. At the September 20, 2011 hearing, believing an agreement could still ultimately be reached, the Parties requested the Court to refer the case to Judge Denlow, the magistrate judge assigned to this case, for a settlement

conference.[2] Pursuant to Judge Denlow's Settlement Conference Standing Order, the Parties exchanged letters containing their respective settlement proposals and views of the merits of the case.

Eventually, through Magistrate Judge Denlow's protocol, the Parties were able to reach an agreement in principle with respect to the relief due to the Settlement Class, and notified the Court that a settlement conference was no longer necessary. (Scharg Decl. ¶ 11.) It is noteworthy that the Parties first reached agreement on the relief due to the Settlement Class, and it was only after an agreement was reached on class-wide relief that they began negotiations on the amount of costs and attorneys' fees to be paid to proposed Class Counsel and the incentive award to Plaintiff. (Scharg Decl. ¶ 12.)

### III.     TERMS OF THE SETTLEMENT

The terms of the settlement follow:

**A.**     ***Class Definition.*** This Settlement Class encompasses all individuals who were charged a transaction fee for withdrawing funds from ATM LK483271 or ATM LK823712, which are located at the Charter One Pavilion at Northerly Island, 1300 South Lynn White Drive, in the City of Chicago, State of Illinois, on June 21, 2011, July 14, 2011, or July 16, 2011 (the "Settlement Class").[3] (Settlement Agreement and Release ["Settlement Agreement"], ¶ 1, a true and accurate copy of which is attached hereto as Exhibit 2.)

---

[2]     The Court also granted Plaintiff leave to amend the pleadings to name Live Nation as a party-defendant. Accordingly, on September 20, 2011, Plaintiff filed her Amended Class Action Complaint (Dkt. No. 7) and motion for class certification (Dkt. No. 9) against Live Nation.

[3]     Based on the documents informally provided to proposed Class Counsel by Live Nation, the Parties were able to determine that the ATMs were only in use for three days during the time period in which the ATMs allegedly lacked the proper fee notifications—June 21, 2011, July 14, 2011, and July 16, 2011. (Scharg Decl. ¶ 7.)

**B.** *Monetary Relief.* Live Nation has agreed to establish a settlement fund in the amount of One Hundred Thousand Dollars ($100,000.00) (the "Settlement Fund") to pay for (i) claims submitted by the Settlement Class members, (ii) notice and administration expenses, (iii) Class Counsel's attorneys' fees and expenses, and (iv) Plaintiff's Incentive Award. (Settlement Agreement, ¶¶ 5-8.) To the extent there are any funds remaining in the Settlement Fund after the above payments have been made ("Remaining Funds"), a portion of such funds shall be contributed to charity, as described below in Paragraph III.C.4.

1. **Payment of Claims and the Claims Process**. To be eligible for a payment pursuant to the settlement, Settlement Class members must submit a claim that (i) is postmarked (or dated, if submitted online) no later than thirty (30) days after the Fairness Hearing, (ii) contains all of the required information set forth in the claim form, (iii) satisfies the requirements of the Settlement Agreement and the terms of the claim form, and (iv) is signed under penalty of perjury (physically or electronically) by the Settlement Class member submitting the claim. (Settlement Agreement, ¶ 6.)

A Settlement Class member that submits a valid claim declaring under penalty of perjury that he or she withdrew funds from either ATM during the relevant time period, and was charged a transaction fee, will be entitled to receive a payment of $150.00.

**C.** *Additional Relief.*

1. **Prospective Relief**. Live Nation has further agreed to monitor the ATMs to ensure proper fee notification signage for a two (2) year period. Live Nation represents and warrants that, at all times since July 25, 2011, fee notice stickers have been posted on the ATMs. (Settlement Agreement, ¶ 11.)

5

      **2.** **Incentive Award for Class Representative**. Live Nation also agreed to pay Plaintiff, as representative of the Settlement Class, subject to Court approval, a class representative award of $1,000.00 (the "Incentive Payment"). (Settlement Agreement, ¶ 8.) The Incentive Payment is intended to compensate Plaintiff for her efforts in the Action and achieving the benefits provided under the Parties' settlement.

      **3.** **Attorneys' Fees and Expenses**. Subject to Court approval, Live Nation has agreed to pay proposed Class Counsel $30,000.00 in attorneys' fees and for reimbursement of expenses (including court costs) associated with this case. (Settlement Agreement, ¶ 7.)

      **4.** **Charitable Contributions**. If any funds remain in the Settlement Fund after all of the payments have been made for (i) claims submitted by the Settlement Class members, (ii) notice and administration expenses, (iii) Class Counsel's attorneys' fees and expenses, and (iv) Plaintiff's Incentive Award, then Live Nation has agreed to contribute (27%) of the Remaining Funds to the Bluhm Legal Clinic of Northwestern University School of Law, and thirteen percent (13%) of the Remaining Funds to the Chicago Legal Clinic. (Settlement Agreement, ¶ 9.)

    **D.** *The Release by Plaintiff and the Settlement Class*. In exchange for the relief described above, Live Nation and each of its related entities and affiliated entities will receive a full release of all claims related to the failure to provide sufficient notice of transaction fees on its ATMs. (Settlement Agreement, ¶ 12.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

    Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. Federal Rule of Civil

Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.* at 615; *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Courts routinely grant class certification in cases such as this, where the defendant failed to post the mandated fee disclosures on their ATMs. *See Burns v. First American Bank,* No. 04 C7682, 2006 WL 3754820 (N.D. Ill. Dec. 19, 2006) (certifying EFTA class for ATM disclosure violations); *see also Flores v. Diamond Bank*, 2008 WL 4861511 (N.D. Ill. Nov. 7, 2008) (certifying EFTA class for ATM disclosure violations).

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and 23(b) and therefore, certification is appropriate.

### A. The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members necessary to meet this requirement, nor is a plaintiff required to calculate the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

7

Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004); *See* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2002). Courts have typically found that classes encompassing 40 or more members are sufficiently numerous. *See, e.g., Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001) ("where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met); *see also Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006) (same); *see also Johnson v. Brelje*, 482 F.Supp. 121, 123 (N.D. Ill. 1979) (finding that "plaintiff's allegation that the classes include *hundreds* of persons ... is enough to satisfy [the numerosity] requirement") (emphasis added).

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. According to Live Nation's own records, there are 210 individuals that were charged a transaction fee for withdrawing money from Live Nation's ATMs on June 21, 2011, July 14, 2011 and July 16, 2011. (Scharg Decl. ¶ 7.) Thus, there should be little question that joinder of all members of the proposed Class would be impractical and that Rule 23(a)'s numerosity requirement is satisfied.

    **B.**    **The Commonality Requirement is Satisfied.**

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Stated differently, commonality requires that the claims of the class "depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

8

Nevertheless, the threshold for commonality is not high. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Instead, commonality is present where a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class.").

In this case, the members of the Settlement Class share the following common questions of fact: (i) whether Live Nation failed to post notice that it would charge a transaction fee for use of its ATMs; and (ii) whether Live Nation did in fact charge a transaction fee for use of its ATMs when no fee notice was posted. These common factual questions lead to several legal questions common to all Settlement Class members, including: (i) whether Live Nation was an ATM "operator" as that term is defined by 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. § 205.16; and (ii) whether Live Nation's failure to post a fee notice, but charge a transaction fee, violated 15 U.S.C. § 1693b(d)(3) and 12 C.F.R. § 205.16.

Thus, there are multiple questions of law and fact common to all Settlement Class members and the commonality requirement is satisfied as well. *See Burns v. First American Bank*, 2006 WL 3754820, at*7 (N.D. Ill. 2006) (finding that "[t]he proposed class is based on a common nucleus of operative facts-that is, defendant charged each class member $2.50 for using [certain ATMs] during the Class Period. Class members also share a common interest in the question of whether defendant's fee notices violated EFTA. Because class members share common questions of law and fact, the commonality prong of Rule 23(a) is met").

    **C.**    **The Typicality Requirement is Satisfied.**

The third requisite to certification under Rule 23(a) asks whether the Plaintiff's claims are typical of those of the proposed Settlement Class. Fed. R. Civ. P. 23(a)(3). The typicality requirement

9

is closely related to commonality and is similarly satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and … are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). However, factual differences alone will not preclude a finding of typicality—the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "'[s]imilarity of legal theory is more important than factual similarity….'" *Id.* (quoting *Harris v. City of Chicago*, Nos. 96 CV 2406, 96 CV 7526, 1998 WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

As alleged in the Complaint, Plaintiffs and the proposed Settlement Class share the exact same legal theories (i.e., Live Nation's violation of EFTA by failing to post the required notice on its ATMs) and their claims have the same essential characteristics. Plaintiff's claims cannot be factually distinguished from the claims of the Settlement Class members because each claim arises from identical conduct—Live Nation's failure to post a fee notice on its ATMs, but still charge a $4.00 transaction fee. Thus, by pursuing her own claims, Plaintiff will necessarily advance the interests of the proposed Settlement Class and their claims are sufficiently typical of those of the other Settlement Class members. Rule 23(a)(3)'s typicality prerequisite is met.

### D. The Requirement of Adequate Representation is Satisfied.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*, 521 U.S. at 625 (the adequacy requirement is meant "to uncover conflicts of interest between named parties and the class they seek to represent"). To satisfy the adequacy requirement, class representatives must establish that (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced,

competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

Here, Plaintiff has the same interests as the proposed Settlement Class— obtaining relief from Live Nation for the imposition of undisclosed ATM fees, and ensuring that it properly posts notice of such fees in the future. As a result, they all have the same interest in recovering the statutory penalties for Defendant's unlawful conduct, and putting an end to Live Nation's alleged misconduct. Plaintiff has no interests antagonistic to those of the proposed Settlement Class and her pursuit of this action demonstrates as much. Indeed, Plaintiff has, and will, continue to advocate vigorously on behalf of the Settlement Class.

Similarly, proposed Class Counsel and the lawyers at the law firm of Edelson McGuire are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. They have regularly engaged in major complex litigation involving the Internet and consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Edelson McGuire LLC, a true and accurate copy of which is attached to the Scharg Declaration as Exhibit 1-A); *see also Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (the fact that proposed class counsel have been found to be adequate in other cases is persuasive). Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency.

Accordingly, both Plaintiff and her counsel have and will continue to adequately represent the Settlement Class.

### E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Upon satisfying Rule 23(a)'s prerequisites, a plaintiff must also demonstrate that the

proposed class satisfies one of the three subsections of Rule 23(b). *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Here, Plaintiffs seek to certify the proposed Settlement Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Settlement Class meets both of these requirements.

      i.      Common Issues of Law and Fact Predominate.

First, the inquiry into whether common questions predominate is generally focused on whether there are common liability issues that may be resolved efficiently on a class basis. *Amchem*, 521 U.S. at 623; *Dukes*, 131 S. Ct. at 2551-57. Although common issues must predominate, they need not be exclusive. *Radamanovich*, 216 F.R.D. at 435. Instead, common issues predominate if they have a direct impact on each class member's ability to establish liability and prevail on the claims asserted. *Lemon v. Int'l Union of Operating Eng'g.*, 216 F.3d 577, 581 (7th Cir. 2000).

In order to prevail on their claims, Plaintiff and each member of the Settlement Class will be required to establish that (i) Live Nation failed to post a fee notice on its ATMs, (ii) Live Nation charged them a transaction fee for withdrawing money from its ATMs, and (iii) Live Nation is an ATM "operator" as defined by EFTA. Furthermore, a claim for statutory damages under EFTA does not require each Settlement Class member to prove that he or she saw the notice on the machine, was confused by the notice, or would not have proceeded with the transaction had they been aware that the actual charge would be $4.00. See *Burns*, 2006 WL 3754820 at *9 ("Each class member's claim requires proof *only* that EFTA was violated") (emphasis added.) Thus, the predominance requirement is satisfied because liability will be decided predominately, if not entirely, based on common evidence of Live Nation's conduct.

### ii. The Class Mechanism is a Superior Method of Adjudication.

Finally, the instant class action is superior to any other available method for the fair and efficient adjudication of the claims in this case. The superiority requirement focuses on whether class treatment will increase efficiency in the litigation and is satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *Hinman,* 545 F. Supp. 2d at 807 (courts must consider whether class treatment represents an "efficient use of both judicial and party resources"); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (in cases where "the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate … society may gain from the deterrent effect of financial awards" on a class basis.).

Absent class treatment in this case, each Settlement Class member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Inefficiency aside, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Moreover, certification will also give all parties the benefit of finality. And, finally, because this action has now been settled—pending approval of the Court—the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case…would present intractable management problems…."). Thus, the superiority requisite is also met. *See Burns*, 2006 WL 3754820 at *10 (fee notice violations under EFTA are particularly appropriate for class treatment").

13

Having satisfied each of the requirements for class certification under Rules 23(a) and 23(b)(3), this Court should certify the proposed Settlement Class, for settlement purposes.

## V. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When the Court grants class certification under Rule 23, it must also appoint class counsel who will fairly and adequately represent the interests of the class. In making this determination, the Court must consider proposed class counsel's (i) work in identifying or investigating potential claims, (ii) their experience in handling class actions and the types of claims asserted in the case at hand, (iii) their knowledge of the applicable law, and (iv) the resources they have committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed above, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this case, and will continue to do so throughout its pendency. (Scharg Decl. ¶¶ 6, 7, 17.) Considering the parties' informational exchanges and several months of negotiations, proposed Class Counsel have a superior knowledge of both the factual and legal elements of the claims alleged in this case. (Scharg Decl. ¶ 17.) And, it was this knowledge that proposed Class Counsel was able to successfully negotiate the settlement now before the Court. (Scharg Decl. ¶ 18.) Moreover, and as discussed above, proposed Class Counsel are well-respected members of the legal community, have significant experience litigating similar class actions, and have frequently been appointed lead class counsel by courts throughout the country. (Scharg Decl. ¶ 17, Ex. 1-A.)

For these reasons, the Court should appoint Plaintiff's counsel to serve as Class Counsel.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

In addition to certifying the Settlement Class, the Court must determine whether the proposed settlement warrants preliminary approval. When deciding whether to grant preliminary approval,

14

courts rely on a well-established two-step process. NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). First, a preliminary, pre-notification hearing is held to determine whether the proposed settlement is "within the range of possible approval." NEWBERG ON CLASS ACTIONS §11.25, at 38-39. The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. If the Court finds the proposed settlement to be "within the range of possible approval," then the case proceeds to the second step in the review process—the final fairness hearing. *Id.*; NEWBERG ON CLASS ACTIONS §11.25, at 38-39.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314). The factors to be considered at this stage are (i) the strength of the plaintiff's case compared to the amount of the settlement; (ii) an assessment of the likely complexity of trial; (iii) the length and expense of the litigation; (iv) the amount of opposition to settlement among affected parties; (v) the opinion of counsel; and (vi) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).

Applying this six-factor test to the instant settlement clearly demonstrates that it is fair, reasonable, and adequate, and that it falls well within the range of possible approval. First, Plaintiffs believe that their claims against Live Nation are strong, well supported by applicable law, and if pursued, would result in a judgment in favor of the Settlement Class. Notwithstanding, they

15

recognize the certainty of recovery—both monetarily and in terms of prospective relief—that the proposed settlement represents. Specifically, with only a minimal showing (i.e., an attestation to being charged a transaction fee), each Settlement Class member will receive a cash payment of $150.00. Moreover, Live Nation has agreed to monitor the ATM for a period of two (2) years to ensure that the fee notice is properly posted. (Settlement Agreement ¶ 11.)

Based upon proposed Class Counsel's analysis and the information obtained from Live Nation, the $100,000.00 Settlement Fund and the $150.00 cash payment represents a significant recovery for the Settlement Class.[4] (Scharg Decl. ¶ 13). Furthermore, Live Nation has agreed to donate 40% of any monies remaining in the settlement fund to two *cy pres* recipients approved by the Court. (Settlement Agreement, ¶ 9.) Given the notice plan (i.e., publication in *The Chicago Sun Times* and the creation of a settlement website), coupled with the ease with which Settlement Class members may file claims (i.e., via paper or electronic submission), proposed Class Counsel believes that the result achieved for the Settlement Class is well within the range of possible approval. (Scharg Decl. ¶ 14.)

Plaintiff and proposed Class Counsel also recognize that despite their belief in the strength of Plaintiff's claims, the expense, duration, and complexity of protracted litigation would be substantial, and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses from across the country—Live Nation is headquartered in Los Angeles, California. (Scharg Decl. ¶ 15.) The fact that the instant settlement was reached only after an exchange of information, and five months of arms' length negotiations and settlement discussions, serves to reinforce that concern. In addition, the defeated party would likely

---

[4] In proposed Class Counsel's opinion, since EFTA does not provide each class member with a minimum recovery for a statutory violation (15 U.S.C. § 1693m(a)(2)(B)), and based on the defenses raised by Live Nation, the settlement payment of $150.00 to each Settlement Class member who submits a valid claim is a strong result.

16

appeal, further delaying any recovery by the Settlement Class. Given the strength of the settlement, Plaintiff anticipates a favorable reaction from the Class, and no significant opposition to the settlement.

For these reasons, Plaintiff and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the settlement weighs heavily in favor of its approval. (Scharg Decl. ¶ 15.) Accordingly, the Court should find that the proposed settlement represents a fair, reasonable and adequate result and that it warrants preliminary approval.

## VII. NOTICE TO THE CLASS SHOULD BE APPROVED.

Finally, Rule 23(b)(3) requires that in cases such as this, where the relief sought includes monetary damages and class certification is requested, notice must be disseminated to the proposed class. The substance of the notice must describe in plain language the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements, as well as due process considerations.

The Parties' Settlement contemplates a two-part notice plan. First, the Settlement Administrator will publish notice of the settlement in *The Chicago Sun Times* for three (3) consecutive weeks. Second, the Settlement Administrator will establish a Settlement Website serving as the "long-form" notice, which will provide uninterrupted access by the public to relevant Court

17

documents, downloadable claim forms, and provide for the online submission of claims. (True and accurate copies of the proposed notices and claim forms are attached to the Settlement Agreement as Exhibits 2-A through 2-C.) The notices are neutral in tone and will provide Settlement Class members with a detailed explanation of their options, which will allow them to make an informed decision as to their participation in the settlement.

The Parties' Notice Plan constitutes the best notice practicable under the circumstances: while the posting of notice on the ATMs themselves has been utilized in similar settlements, the ATMs at issue in this case are only used during concerts at the Northerly Island Pavilion—a relatively small concert venue located in downtown Chicago that is only open for concerts during the summer months. (Scharg Decl. ¶ 16.) Even then, only concertgoers with tickets are allowed to enter the premises. (Scharg Decl. ¶ 16.) Hence, the Northerly Island Pavilion is closed until next summer, and thus the posting of notices on the ATMs themselves would be ineffective since nobody would see them. (Scharg Decl. ¶ 16.) Therefore, publication of the notice in *The Chicago Sun Times* for three (3) consecutive weeks, combined with the notice provided by the Settlement Website constitutes the best notice practicable under the circumstances.

As such, the proposed notice plan comports with Rule 23 and the requirements of due process and should be approved by the Court.

**VIII. CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) certifying the Settlement Class as defined in the Parties' Settlement Agreement and Release; (ii) appointing Clair Loewy as the Settlement Class Representative; (iii) appointing the undersigned as Class Counsel; (iv) preliminarily approving the Parties' Settlement Agreement; (v) approving the form and methods of the proposed notice; and (vi) granting such other and further relief as the Court

deems reasonable and just.[5]


Dated: December 14, 2011                Respectfully submitted,

                                        **CLAIR LOEWY**, INDIVIDUALLY AND ON
                                        BEHALF OF ALL OTHERS SIMILARLY SITUATED,

                                        By: /s/ Ari J. Scharg
                                                One of Plaintiff's Attorneys


Ari J. Scharg
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
*ascharg@edelson.com*

---

[5] A proposed preliminary schedule of deadlines leading to final approval is contained in the [Proposed] Preliminary Approval Order attached to the Settlement Agreement as Exhibit 2-D.

## CERTIFICATE OF SERVICE

      I, Ari J. Scharg, an attorney, certify that, on December 14, 2011, I served the above and foregoing *Motion for Preliminary Approval*, by causing true and accurate copies of such papers to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 14th day of December, 2011.

Paul T. Fox
Greenberg Traurig
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
*foxp@gtlaw.com*

Tanisha R. Reed
Greenberg Traurig
77 W. Wacker Drive, Suite 3100
Chicago, Illinois 60601
*reedt@gtlaw.com*

                                                  /s/ Ari J. Scharg